IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| WENDELL JEROME BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:15-cv-2539-DCN |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on United States Magistrate Judge Kevin F. McDonald's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Carolyn Colvin's (the "Commissioner") decision denying plaintiff Wendell Jerome Brown's ("Brown") claim for disability insurance benefits ("DIB"). Brown filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I.  BACKGROUND[1]

### A.   Procedural History

Brown filed an application for DIB on October 9, 2012, alleging disability beginning March 12, 2010. The Social Security Administration denied Brown's claim initially and on reconsideration. Brown requested a hearing before an Administrative Law Judge ("ALJ") and ALJ Thomas G. Henderson held a hearing on November 5, 2013. The ALJ issued a decision on January 16, 2014, finding that Brown was not disabled under the Social Security Act. Brown requested Appeals

---

[1] Unless otherwise noted, the following background is drawn from the R&R.

Council review of the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On June 25, 2015, Brown filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on July 13, 2016, recommending that this court affirm the ALJ's decision. Brown filed objections to the R&R on August 11, 2016, and the Commissioner responded to Brown's objections on August 26, 2016. The matter is now ripe for the court's review.

### B.    Medical History

Because Brown's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Brown was born on January 29, 1971, and was 40 years old at the time of his alleged disability onset date. He communicates in English and has a limited education.

### C.    ALJ's Decision

The ALJ employed the statutorily required five-step sequential evaluation process to determine whether Brown was disabled between March 12, 2010, and September 30, 2011, the date Brown was last insured under 20 CFR § 404.1520(g). At step one, the ALJ determined that Brown had not engaged in substantial gainful activity during the relevant period. Tr. 25. At step two, the ALJ found that Brown suffered from the following severe impairments: (1) lumbar degenerative disc disease and (2) borderline intellectual functioning. Id. At step three, the ALJ determined that Brown's impairments did not meet or equal any of the listed impairments in the Agency's Listing of Impairments ("the Listings"). Tr. 26; see 20 C.F.R. § 404, Subpt. P, App'x 1. Before reaching the fourth step, the ALJ determined

that Brown had the residual functional capacity ("RFC") to perform sedentary work, as defined by 20 C.F.R. § 404.1567(a), with certain restrictions. Tr. 27. More specifically, the ALJ determined that Brown: (1) would need the ability to alternate between sitting and standing every 30 minutes; (2) was limited to only occasional postural activities; (3) could never climb ropes, ladders, or scaffolds; (4) should avoid concentrated exposure to work hazards; and (5) was limited to routine repetitive tasks. Id. At step four, the ALJ found that Brown was unable to perform his past relevant work as a groundskeeper, concrete finisher, and lawn care maintenance worker. Id. at 33. Nevertheless, the ALJ found that given Brown's age, education, work experience, and RFC, he was capable of performing other work that exists in significant numbers in the national economy. Id. at 34. Therefore, the ALJ concluded that Brown was not disabled. Id.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v.

Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987)

### III.   DISCUSSION

Brown states three basic objections to the R&R, arguing that the magistrate judge erred in failing to find that: (1) that he was intellectually disabled under Listing 12.05(c); (2) the ALJ improperly weighed certain medical opinions in determining his RFC; and (3) the ALJ erred in failing to ask the impartial vocational expert ("VE") certain hypothetical questions at the hearing. The court will address each objection in turn.

  A. **Listing 12.05(c)**

Brown argues that the ALJ erred in failing to find that he was disabled under Listing 12.05(c). Pl.'s Objection 1–2. The Commissioner argues that the ALJ properly determined that Brown was not disabled under Listing 12.05(c) because

Brown failed to prove the requisite deficits in adaptive behavior to qualify as disabled under Listing 12.05(c). Def.'s Reply 2.

The Fourth Circuit has explained that Listing 12.05(c) establishes a three-pronged test for evaluating a claim of intellectual disability. Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). The first prong—which is at issue in this case[2]—"requires a showing of 'deficits in adaptive functioning initially manifested during the developmental period; i.e., [] evidence [that] demonstrates or supports onset of the impairment before age 22.'" Id. (quoting Listing 12.05). The second and third prongs require a claimant to show "'[a] valid verbal, performance, or full scale IQ of 60 through 70,' [] as well as 'a physical or other mental impairment imposing an additional and significant work-related limitation of function,'" respectively. Id. (quoting Listing 12.05(c)). In evaluating a claimant's deficits in adaptive functioning, courts have looked to "areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012); Seabrook v. Colvin, No. 6:14-cv-2475, 2016 WL 2956966, at *6 (D.S.C. May 17, 2016), report and recommendation adopted, 2016 WL 2939632 (D.S.C. May 20, 2016); Williams v. Colvin, 2014 WL 3828224, at *11 (E.D. Va. Aug. 4, 2014). Assessing a claimant's adaptive functioning is a "fact-specific inquiry with few bright line rules." Richardson v. Colvin, No. 8:12-cv-03507, 2014 WL

---

[2] There appears to be little debate that the ALJ erred in evaluating the second prong, which requires a "valid verbal, performance, or full scale IQ of 60 through 70." R&R at 14. However, this error is harmless to the extent the ALJ correctly found that Brown failed to establish the first prong of the test.

793069, at *11 (D.S.C. Feb. 25, 2014) (citing Salmons v. Astrue, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012)).

The ALJ determined that Brown did not suffer from any significant deficits in adaptive functioning based on prior work at semi-skilled jobs, his ability to drive, prepare simple meals and shop, his ability to read and perform simple math, and the absence of any reference to borderline intellectual functioning in his treating physicians' records. Tr. 26. Caselaw supports the ALJ's reliance on such evidence. Courts have recognized that a claimant's performance of a semi-skilled job is inconsistent with a finding of deficits in adaptive functioning. See Hancock, 667 F.3d at 476 (noting claimant's previous work at semi-skilled jobs in upholding ALJ's finding on adaptive functioning); Sims v. Colvin, No. 6:12-cv-3332-DCN, 2014 WL 793065, at *11 (D.S.C. Feb. 24, 2014) ("The ALJ reasonably considered several factors, including . . . her work history including semi-skilled work, in determining that she did not manifest the requisite deficit in adaptive functioning."). A claimant's ability to care for his or herself and perform simple tasks such as driving, shopping, and preparing simple meals also suggests the claimant possesses sufficient adaptive functioning. Hancock, 667 F.3d at 476 (noting claimant's ability to perform various tasks, in affirming ALJ's conclusion that had no deficits in adaptive functioning); Sims v. Colvin, No. 0:14-cv-1663, 2015 WL 5525096, at *3 (D.S.C. Sept. 17, 2015) (recognizing claimant's ability to obtain driver's license as evidence supporting determination that the claimant had no deficits in adaptive functioning). Literacy and the ability to perform simple math are also factors to consider. Heaton v. Colvin, No. 0:15-cv-1150, 2016 WL 5109191, at *6 (D.S.C. Apr. 21, 2016), report and

6

recommendation adopted, 2016 WL 4993399 (D.S.C. Sept. 19, 2016).  Finally, the absence of any reference to low intellectual functioning in a claimant's treatment history suggests that the claimant's IQ score is not a true measure of his or her adaptive functioning.  Satterwhite v. Colvin, No. 5:14-cv-01152, 2015 WL 5054559, at *8 (D.S.C. Aug. 25, 2015) (finding that the "ALJ reasonably discredited [] IQ scores based on substantial contradictory evidence," including absence of "references to complaints about or findings of low intellectual functioning" in claimant's medical records); see also Richardson, 2014 WL 793069, at *11 (stating that "a claimant's diagnosis, if there is one, is pertinent" to an adaptive functioning analysis).

Brown does not dispute that this evidence exists,[3] but argues that his low IQ scores, his lack of educational progress, and his testimony that he had trouble reading and performing simple math all provide evidence of deficits in adaptive functioning.  Pl.'s Objections 2.  However, the existence of some evidence in Brown's favor is not cause for remand.  It is the ALJ's "duty to find facts and consider the import of conflicting evidence" in evaluating a claimant's adaptive functioning.  Hancock, 667 F.3d at 476.  The court's role is to simply determine whether the ALJ's decision is supported by substantial evidence.  Id.; Smith v. Chater, 99 F.3d 635, 638 (4th Cir.

---

[3] In a separate section of his objections, Brown takes issue with the ALJ's characterization of certain aspects of his testimony, arguing that he attends church and prepares meals very rarely, and that it is his daughter who visits him, not the other way around.  Pl's Objections 6.  However, the court has reviewed the hearing transcript and finds the ALJ's conclusions to be a reasonable reflection thereof.  Though plaintiff testified that he drove, shopped, and prepared meals infrequently, Tr. 47, 48, 55, it was at least reasonable for the ALJ to find that Brown had the ability to conduct such activities in assessing his adaptive functioning.  As for the ALJ's statement that Brown "visits with his daughter"—which was not specifically part of the adaptive functioning assessment—the court does not read such language to assert that Brown actually travels to see his daughter.

1996) ("We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence."). Though the ALJ's stated that there was "no evidence" of deficits in adaptive functioning, Tr. 26, this statement appears to reflect an error in phrasing, rather than an error in the ALJ's actual analysis. A full reading of the ALJ's decision reveals that the ALJ did in fact consider the evidence Brown highlights,[4] but simply found that it was outweighed by the evidence discussed in the preceding paragraph. See Tr. 26–27 (noting Brown's IQ scores, citing to vocational expert report containing more recent IQ test, and acknowledging Brown's academic difficulties in conducting Listing 12.05 analysis); see also id. at 28–30 (evaluating credibility of Brown's testimony).

The court finds that it was at least reasonable for the ALJ to reach this conclusion, and therefore, the ALJ's decision was supported by substantial evidence. See Craig, 76 F.3d at 589 (recognizing that substantial evidence exists where "reasonable minds can differ as to whether a claimant is disabled").

---

[4] Brown is specifically troubled by the ALJ's decision to discount independent vocational consultant Joel Leonard's ("Leonard") April 2012 report that Brown was totally disabled, which the ALJ noted was provided after Brown's date last insured. Pl.'s Objections 2. Brown argues that such evidence should have been considered and given weight pursuant to Bird v. Comm'r of Soc. Sec. Admin., which requires "retrospective consideration of evidence [] when 'the record is not so persuasive as to rule out any linkage' of the final condition of the claimant with his earlier symptoms." 699 F.3d 337, 341 (4th Cir. 2012). However, the ALJ quite clearly considered Leonard's report. See Tr. 26 (citing to Leonard's report); Id. at 32 (discussing weight given to Leonard's report). Bird does not require retrospective evidence be given any specific weight or require the ALJ to completely ignore the fact that such evidence was submitted after the date last insured. See King v. Colvin, 2016 WL 4599902, at *8 (E.D. Va. Sept. 2, 2016) ("Neither Bird nor any case cited by Plaintiff states that an ALJ may not even consider the fact that an opinion was given after the date last insured when determining weight.").

### B.  Weighing Medical Opinions

Brown also takes issue with the different weights the ALJ attributed to the medical opinions offered by treating physician Dr. John Johnson ("Johnson"), treating physician Dr. James K. Aymond ("Aymond"), and state agency physician Dr. Tom Brown (the "state agency physician").  Pl.'s Objections 3–4.  More specifically, Brown argues that:  (1) Johnson's opinion that Brown was unable to sit, stand, or walk for more than 10 minutes at a time should have been given controlling weight; (2) the ALJ should not have given Aymond's opinion greater weight than Johnson, because Aymond only saw Brown twice, early in his course of his treatment; and (3) the ALJ should not have given any weight to the state agency physician's opinion because he did not have access to the entire medical record and did not discuss certain portions of the medical record that were available.  Id.  The court addresses each argument in turn.

### 1.  Controlling Weight

Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence.  20 C.F.R. § 404.1527(c).  Medical opinions are evaluated pursuant to the following non-exclusive list of factors:

> (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).  A treating physician's opinion on the nature and severity of a claimant's impairment will be given controlling weight if it "is well supported by medically acceptable clinical and

9

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Craig, 76 F.3d at 590 (emphasis and alteration in original) (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)). The ALJ must give specific reasons for the weight given to a treating physician's medical opinion. See SSR 96-2p, 1996 WL 374188 (July 2, 1996).

The ALJ determined that Johnson's opinion was inconsistent with the weight of the evidence, particularly the findings of Dr. Blake Dennis ("Dennis"), who observed that Brown's MRI results did not explain his pain and that Brown had normal strength in his lower extremities. Tr. 29, 31. The ALJ also found that Johnson provided little explanation for his conclusion and did not conduct a substantial examination. Id. at 31. Brown argues that Johnson's opinion was entitled to controlling weight because it was corroborated by medical evidence and there was no evidence in the record that was inconsistent with Johnson's findings.[5] Pl.'s Objections 3–4. Brown highlights MRI results showing degenerative changes to Johnson's lower lumbar regions and evidence that Brown received injections recommended by multiple doctors, suffered from a decreased range of motion, and was diagnosed with certain disk-related conditions. Id.

Again, Brown appears to assume that the existence of evidence in support of his claim is sufficient to disturb the ALJ's conclusion. As explained above, this is not the rule. The court must "uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct

---

[5] Brown's objections appear to argue that Johnson's opinions were consistent with his own treatment records, Pl.'s Objections 4, but this is simply not the standard. The ALJ must evaluate the opinions' consistency with the "case record." Craig, 76 F.3d at 590 (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)).

legal standard." Craig, 76 F.3d at 589. Therefore, as long as there was substantial evidence in the record that was inconsistent with Johnson's opinion, that opinion was not entitled to controlling weight.

Brown does not address the ALJ's finding that Johnson's opinion was inconsistent with Dennis's evaluation. Brown does not even challenge the ALJ's assertion that Johnson did not explain his conclusion; he simply argues that the treatment records provide enough explanation. Pl.'s Objections 4. The record reveals that Dennis reviewed Brown's lumbar MRI results in December 2011 and found "minimal if any abnormality" and "[c]ertainly no abnormality that would explain his pain." Tr. 310. Considering it was Johnson who referred Brown to Dennis after becoming concerned that Brown's condition was deteriorating, Tr. 305 (recommending updated MRI and follow-up with the surgeons), Dennis's evaluation would seem particularly significant in evaluating Johnson's opinion.

Moreover, while Johnson certainly saw Brown with some frequency and duration, the court finds that the ALJ was reasonable in concluding that Johnson did not conduct an extensive examination.[6] The treatment records from Brown's initial visit with Johnson show that Johnson reviewed Brown's medical history and recorded Brown's subjective account of his symptoms. Tr. 302. But the record does not disclose any detailed "examination," and instead states that Brown's "examination is essentially unchanged from that noted by Dr. Donald Johnson." Id. Johnson's subsequent treatment records contain similar notations. Id. at 303–05. Most of the

---

[6] Though the ALJ uses the phrase "real examination," the court again finds this phrasing somewhat imprecise and does not adopt it in an effort to avoid any suggestion that Johnson's treatment of Brown was somehow deficient.

observations in Johnson's records that deal with Brown's symptoms are derived from Brown's own subjective reports. A treating physician's opinion may be discounted when it is "based largely upon the claimant's self-reported symptoms." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, the court finds that the ALJ properly discounted Johnson's opinion to the extent it was supported by his examination of Brown.

The court also finds no error in the ALJ's observation that Johnson did not provide any explanation of his conclusions. Tr. 31, 347. Courts have observed that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Foskey v. Colvin, 2014 WL 1903340, at *8 (E.D. Va. Apr. 30, 2014) (quoting Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993)); see also Ward v. Chater, 924 F. Supp. 53, 56 (W.D. Va. 1996) (discounting treating physician's opinion where the physician's "notes [did] not confirm his conclusion that plaintiff can lift only 10 pounds occasionally, and he offered no explanation for that finding").

Based on these weaknesses in Johnson's opinion, the court finds that the ALJ's decision to discount that opinion was supported by substantial evidence.

### 2. Weighing Johnson Against Aymond

Brown also argues that the ALJ should not have given greater weight to Aymond's opinion that Brown could perform sedentary work than he gave to Johnson's opinion that Brown could only sit, stand, or walk for up to ten minutes each. Pl.'s Objections 4. Brown argues that this assessment was in error because

Aymond only saw him twice, with the last visit occurring in May 2010, before he began treatment with Johnson. Id.

As discussed above, the treatment relationship between the physician and the claimant is a legitimate factor to consider when assigning weight to the physician's opinion. Johnson, 434 F.3d at 654. However, it is only one factor in a non-exclusive list that also includes: "[1] whether the physician has examined the applicant, [2] the supportability of the physician's opinion, [3] the consistency of the opinion with the record, and [4] whether the physician is a specialist." Id. For the reasons outlined in the preceding section, certain of these other factors—particularly, the "supportability" of the opinion and the opinion's consistency with the record—undermine Johnson's opinion.

Therefore, the court cannot conclude that the ALJ erred in given Aymond's opinion greater weight than Johnson's.

### 3.     Dr. Brown's Opinion

Brown next argues that the ALJ should not have given any weight to the state agency physician's opinion that Brown could perform light work with certain restrictions. Pl.'s Objections 4. Brown contends that the state agency physician's opinion should be disregarded because the state agency physician did not have access to Johnson's opinion, Dr. Ellen Rhame's ("Rhame") opinion, and the opinion fails to account for Johnson's treatments records that were in Brown's file at the time. Id.

As an initial matter, a state agency physician's opinion is not rendered invalid simply because it is offered prior to other medical opinions. See Geiger v. Astrue, 2013 WL 317564, at *7 (W.D. Va. Jan. 27, 2013) ("The simple fact that those

opinions came later in time than the state agency opinions does not mean that they should be accorded greater weight."); Thacker v. Astrue, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011), report and recommendation adopted, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012) ("The fact that the state agency physician did not have access to the entire evidentiary record-because the record was incomplete a[t] the time of the assessment-is inconsequential as the ALJ considered the entire evidentiary record and substantial evidence supports his determination."). Thus, the fact that the state agency physician did not have access to Johnson or Rhame's opinions makes no difference.

With respect to Brown's contention that the state agency physician failed to consider Johnson's treatment records, the court first observes that "[f]indings of fact made by [s]tate agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources." SSR 96-6P. "[A] non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986). There is no explicit requirement that a non-examining source account for all evidence in the medical record in explaining their opinion. Unless a treating physician's opinion is given controlling weight—which is not the case here—the ALJ must evaluate all medical opinions based on the examining relationship, treatment relationship, supportability of the opinion, consistency of the opinion with the record, specialization of the source, and any other relevant factors. 20 C.F.R. §§ 404.1527, 416.927; Johnson, 434 F.3d at 654. Thus, to the extent

Brown argues that the state agency physician's opinion must be set aside purely because it failed to address Johnson's treatment records, his argument fails.[7]

### C.     Hypothetical Questions

Brown argues—without citing any authority—that the ALJ erred in failing to ask the VE any questions relating to Brown's intellectual functioning, his use of a cane, and his alleged need to alternate between siting, standing, and walking every 10 minutes. Pl.'s Objections 5–6. The Commissioner argues that the ALJ's questioning of the VE accounted for all limitations that were credibly established by the record. Def.'s Reply 8.

In Walker v. Bowen, the Fourth Circuit explained the purpose of VE testimony as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which [the] particular claimant can perform. In order for a vocational

---

[7] To the extent Brown argues that the state agency physician's failure to account for Johnson's treatment records indicates that the state agency physician's opinion is inconsistent with the record as a whole, Brown's argument is woefully unspecific. "The Fourth Circuit has held that an objecting party must do so 'with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Rucker v. Colvin, 2016 WL 5231824, at *2 (W.D. Va. Sept. 20, 2016) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007)). Brown's argument on this point is contained in two sentences which state that: "[The state agency physician]'s RFC only took into account Dr. Forrest's records with no mention of the records of [] Johnson or other records from Southeastern Spine. It should be noted that the RFC of [the state agency physician] is dated 12/28/12 and that the treatment records of [] Johnson were in the [Brown]'s file." Pl.'s Objections 4. This argument does not provide any explanation for why Brown believes the state agency physician's opinion is inconsistent with the record—assuming he believes that in the first place. In any event, the court has conducted a review of the record and finds that, at the very least, "reasonable minds could disagree" about whether the state agency physician's opinion is consistent with the record. Craig v. Chater, 76 F.3d at 589. Thus, the court finds that the ALJ's decision to credit the state agency physician's opinion was supported by substantial evidence.

> expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, [] and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

889 F.2d 47, 50 (4th Cir. 1989). "Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record." Naylor v. Astrue, 693 F. Supp. 2d 544, 566 (S.D.W. Va. 2010); Blake v. Colvin, No. 0:13-cv-00276-DCN, 2014 WL 4955663, at *5 (D.S.C. Sept. 29, 2014).

Here, the ALJ found that Brown was capable of performing sedentary work, so long as that work was limited to "simple routine repetitive tasks" and subject to certain other restrictions that are not at issue here. Tr. 27. The ALJ explained that this task restriction was added to Brown's RFC to account for his "history of borderline intellectual functioning," id. at 33, and incorporated this restriction into his hypothetical questioning of the VE. Id. at 63–65. Courts have found such similar questioning sufficient to account for a claimant's borderline intellectual functioning. Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) (approving of hypothetical question where "ALJ told the expert to assume [the claimant] '[could not] perform complex tasks'"); Howard v. Massanari, 255 F.3d 577, 582 (8th Cir.2001) ("We find that [a hypothetical question] describing [the claimant] as capable of doing simple work adequately accounts for the finding of borderline intellectual functioning").

However, as the R&R observed, the Fourth Circuit recently held that a hypothetical restriction to simple, routine, and repetitive tasks does not account for a claimant's difficulties in concentration, persistence, or pace. Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). The Mascio court explained that a hypothetical

restriction to simple, routine, and repetitive tasks may nevertheless account for a claimant's borderline intellectual functioning, if the ALJ explains why the claimant's concentration, persistence, and pace limitations do not affect the claimant's ability to work. Id. Here, the ALJ found that Brown suffered from "moderate deficiencies in concentration, persistence, or pace," Tr. 27, but later addressed these deficiencies in connection with his RFC assessment, explaining that Brown "has not encountered more than mild to moderate restrictions in his activities of daily living, social functioning, and concentration, persistence or pace, nor has he experienced repeated episodes of decompression." Id. at 33. Taking theses "mild to moderate restrictions" into account, alongside Brown's ability to obtain a driver's license and perform at various semi-skilled jobs, the ALJ determined that imposing a simple, routine, and repetitive task restriction was appropriate. Id. The ALJ's analysis demonstrates a consideration of the magnitude of Brown's mental impairments—including his deficiencies in concentration, persistence, and pace—and an evaluation of the effect such impairments have on his ability to work, as evidenced by his work history. The court agrees with the magistrate judge that this explanation is sufficient to "explain why [the claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [the claimant's] residual functional capacity." Mascio, 780 F.3d at 638. Therefore, the court finds no error in the ALJ's failure to conduct further hypothetical questioning in connection with Brown's borderline intellectual functioning.

     Brown also contends that the ALJ erred in failing to ask the VE any questions regarding Brown's use of a cane. Pl.'s Objections 6. The reason for this failure is

simple—the ALJ determined that there was no evidence in the record that the cane was medically necessary. Tr. 30 ("As to the claimant's alleged use of a cane, there is no mention in the treatment records that a cane was ever prescribed by a treating physician."). Because the ALJ was not obligated to pose hypothetical questions regarding restrictions that lacked evidentiary support, the ALJ was under no obligation to ask the VE about a cane.[8]

The same reasoning applies to Brown's argument that the ALJ improperly failed to credit his counsel's hypothetical question to the VE regarding the ability to stand, sit or walk for only ten minutes at a time. Pl.'s Objections 10. This hypothetical was derived from Johnson's opinion, which was discounted for the reasons described in section III.B.1. above.

Therefore, the court finds the ALJ did not err in his questioning of the VE.

## IV.   CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R, and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 26, 2016**
**Charleston, South Carolina**

---

[8] Brown also failed to raise such an argument in this briefing before the magistrate judge. This failure is reason enough to deny this objection.